IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARY PERRY, an individual, and DENISE PERRY, an individual, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO. 00-JEO-404-S ) |
| NOLAND COMPANY, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In this action, which was commenced in Jefferson County Circuit Court, plaintiff Gary Perry ("the plaintiff") asserts that defendant Noland Company ("the defendant") negligently and wantonly "maintained, repaired, and/or constructed the loading dock" at the defendant's facility and negligently and wantonly "allowed the premises to remain unsafe and did not warn [the] plaintiff of the hazardous condition causing [the] plaintiff to fall and injure himself." (Doc. 1, Complaint, Counts I & II).[1] Plaintiff Denise Perry also asserts a claim for "lost services and affections" as a result of plaintiff Gary Perry's injuries. (*Id.*, Count III). Presently before the court is the defendant's motion for summary judgment on the plaintiffs' claims. (Doc. 7). Upon consideration, the court finds that the defendant's motion for summary judgment is due to be denied.

## I. FACTUAL SUMMARY

Plaintiff Gary Perry, a truck driver, was injured on December 3, 1997, while delivering a load of freight at the defendant's facility. It was drizzling when the plaintiff arrived at the

---

[1] References to "Doc.___" are to the numbers assigned by the Clerk of the Court to a particular pleading. References herein to "Ex. ___" are to the exhibits attached to each document in a pleading. References to "p. ___" are to the page.

location and backed his tractor-trailer up to the loading dock to unload cargo. (Doc. 7, Ex. 1, pp. 62, 70). He described it as a "nasty wet day[ ]." (*Id.*, p. 81). He stepped out of the truck and walked to the loading dock, stepped up the ladder and onto the dock. (*Id.*, pp. 70-71). An individual at the facility "popped [ ] up" the deck board[2] that was built into the concrete loading dock. (*Id.*, pp. 62-63). The deck board is lifted so that it can fall back on the truck to serve as a ramp, thereby easing the unloading process. (*Id.*, pp. 62-63). The individual on the dock was having difficulty getting the deck board to go down; so he stood on it in an attempt to force it down. (*Id.*). When it would not go down, the plaintiff stepped up on it when it was about a foot and a half or two feet up in the air to help force it down. (*Id.*, pp. 63, 69). When he did this, his "right foot slid out and [he] landed on the deck board and slid way down . . . ." (*Id.*). The plaintiff could not recall at his deposition whether the deck board was wet, but he knew that his feet were.[3] (*Id.*, pp. 69-70). He slid down the deck board because it did not move. He landed on his left leg, followed by his hip. (*Id.*, pp. 74, 76). At the time, he was wearing an "air cast" on his left foot as a result of a previous injury. (*Id.*, p. 76). As a consequence of the incident giving rise to this action, the plaintiff "recracked" his foot and later started having back problems. (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is

---

[2] Although the term "deck board" connotes that the surface is wooden, it is not. The exhibits attached to the plaintiff's deposition show that it is a rough metal surface. (Doc. 8, Ex. 2 & 3). It is referenced by the parties in the deposition and other pleadings as either a deck board or a dock board. For consistency, the court will refer to it as a deck board.

[3] His best recollection was, "It seemed like it was [wet] but I can't be positive if it was or was not. If I said either way - - I'm just not - - not positive. It seemed like it was. You know how drizzling rain blows anyway and especially that time of year you get wind." (Doc. 8, Ex. 1, p. 81).

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at

3

322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant

4

need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643. *See also Shelon v. Boston Financial, Inc.*, 638 So. 2d 824, 825 (Ala. 1994) ("In reviewing a summary judgment, we must construe the evidence in the manner most favorable to the appellant, and we must resolve all doubts against the appellee.").

### III. DISCUSSION

The defendant asserts that summary judgment is due to be granted because the danger in this case was both known and obvious to the plaintiff. The plaintiff retorts that the question is not whether the danger was open and obvious, but whether the deck board was "malfunctioning and caused him to have to stand on it to make it work properly." (Doc. 10, p. 3). He further asserts that even if the issue is whether the dangerous nature of the deck board when it is raining was open and dangerous, as is argued by the defendant in its brief, the law in Alabama is such that summary judgment is not appropriate. (*Id.*).

The law in Alabama is clear in instances such as this involving an invitee:

> "The duty owed to an invitee 'is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care.'"

[*Ex parte Mountain Top Indoor Flea Market, Inc.*,] 699 So. 2d [158,] at 161 [(Ala. 1997)] (citations omitted). Furthermore, in order to prevail on a premises-liability claim,

> "[the plaintiff] must prove that her fall resulted from a defect or instrumentality located on the premises, that the fall was a result of the defendants' negligence, and that the defendants had or should have had notice of the defect or instrumentality before the accident."

*Paige v. Wal-Mart Stores, Inc.*, 638 So. 2d 4, 5 (Ala. Civ. App. 1994) (citation omitted).

*Bud's Outlet v. Smith*, ___ So. 2d ___, 2000 WL 218301, *2 (Ala. Civ. App. February 25, 2000). The court in *Bud's Outlet* further stated:

> "[A] landowner is not liable to invitees for harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Hartzog v. Compass Bank*, 686 So. 2d 325, 326-27 (Ala. Civ. App. 1996) (citing *Boyd v. Sears Roebuck & Co.*, 642 So. 2d 949 (Ala. 1994)). This court in *Hartzog* went on to state, in regard to the facts of a slip-and-fall case, that for "a condition to be 'obvious,' the condition and the risk must be apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee." *Id.* at 327 (citing *Shelton v. Boston Financial, Inc.*, 638 So. 2d 824 (Ala. 1994)).

*Bud's Outlet*, 2000 WL 218301 at *3. *See also Hinson v. United States*, 55 F. Supp. 2d 1376, 1382 (S.D. Ga. 1998) ("A landowner owes an invitee the legal duty 'to maintain the premises in a reasonably safe condition, or if it is unsafe, to warn of all hidden defects and dangers which are known by it, but which are unknown by, or are not such as ought to be known by, the invitee.' *Bush v. Alabama Power Co.*, 457 So. 2d 350, 354 (Ala. 1984)".). The court in *Hinson* stated:

> "It is well established . . . that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care." *Ex parte Industrial Distribution Services Warehouse, Inc.*, 709 So. 2d 16, 19 (Ala. 1997). *See also Owens v. National Security of Alabama*, 454 So. 2d 1387 (Ala. 1984). Thus, "[i]f the danger is open and obvious, the invitor cannot be held liable."
>
> . . . .
>
> The general rule applies even when an invitee exercises "due care to avoid injury because the focus of [Alabama's] premises liability law is not on the care that may have been exercised by the invitee." [*Ex parte Industrial Distribution*, 709 So. 2d at 20]. Instead, the focus is on "relieving a premises owner of legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care." *Id.* at 21.

*Hinson*, 55 F. Supp. 2d at 1382-83. Finally, in *Shelton*, 638 So. 2d 824, the court stated:

> A landowner owes an invitee the legal duty "to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation, and to warn the invitee of known dangers, or

> dangers that ought to have been known, and of which the invitee was ignorant." *Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60 at 62, 173 So. 388 (1937). Additionally, Restatement (Second) of Torts § 343A (1965), as relied on by this Court in *Terry v. Life Ins. Co. of Georgia*, 551 So. 2d 385, 386 (Ala. 1989), states: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." In order for a condition to be "known," one "must be aware of the existence of the condition and must appreciate the danger it involves." *Terry*, 551 So. 2d at 386. However, for a condition to be "obvious," "the condition and risk [must be] apparent to, and [of the type that] would be recognized by, a reasonable person in the position of the invitee." *Id.*

*Shelton*, 638 So. 2d at 825.

The court finds that the issue at this juncture is whether the evidence conclusively shows that a reasonable person would have recognized and appreciated the danger caused by the deck board under the circumstances so as to warrant the granting of a motion for summary judgment premised on the fact that it was an "open and obvious danger." In reviewing this issue, the court notes that the Alabama Supreme Court has stated, "The questions of the openness and obviousness of a defect or danger and of the plaintiff's knowledge of such conditions are not properly considered matters of law for summary judgment. *Bogue v. R & M Grocery*, 553 So. 2d 545 (Ala. 1989)." *Breeden v. Hardy Corp.*, 562 So. 2d 159, 160-61 (Ala. 1990). *Accord Ford v. Bynum Livestock and Commission Company, Inc.*, 674 So. 2d 600, 603 (Ala. Civ. App. 1995), *cert. denied*, ___So. 2d ___, No. 1950425 (Ala. 1996).

This is a very fact intensive consideration and the result in each case necessarily will vary greatly premised on the circumstances. The plaintiff relies on the Alabama Supreme Court's decision in *Bogue*, 553 So. 2d 545, where the court reversed the trial court's decision granting the defendant summary judgment in a slip-and-fall case. In that case, the plaintiff was injured as she fell due to a drop in elevation from the doorway to the parking lot. In opposition to the

7

defendant's motion for summary judgment, the plaintiff offered the affidavit of a civil engineer stating that the step in question was defective and was a hazard. *Id.* at 546. The trial court granted summary judgment. The Supreme Court reversed stating:

> . . . .Once it has been determined that the duty owed to an invitee has been breached, questions of contributory negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury. This is such a case. There are any number of factual issues for a jury in this case as there usually are in negligence cases. . . .

*Id.* at 547-48. Two justices dissented, stating:

> In light of the fact that Bogue fully appreciated the alleged defect or hazard that she states might have caused her to fall, and based upon her statement that she did not know what caused her to fall, I would hold that there was no evidence from which a jury could find that there was a defect in the premises that proximately caused her to fall and sustain injury and that the trial court's entry of summary judgment was appropriate.
>
> If Bogue cannot state that the alleged defect was the cause of her fall, how can a jury make that finding?

*Id.* at 549.

The defendant relies on *Shelton*, 638 So. 2d 824 and *Wal-Mart Stores v. White*, 476 So. 2d 614 (Ala. 1985). In *Shelton*, the plaintiff was injured when she slipped and fell while walking down a grassy slope on the defendant's property when it had been raining. Specifically, she

> maintain[ed] that the building had no gutters and that rainwater, therefore, was funneled from the roof onto the grassy area abutting the walkways, thus causing this area to become slippery. Additionally, she assert[ed] that Boston Financial had a duty to install a railing, a flower bed, a toeboard, or some other device to discourage tenants from using the grass instead of the walkway. She says that she was never warned to stay off the grassy area or that it was slippery.

*Shelton*, 638 So. 2d at 825. The trial court granted summary judgment for the defendant. The Supreme Court affirmed the trial court holding:

> although Ms. Shelton maintains that she did not know that the grass was wet or that it posed a danger, she did know that it had been raining. A reasonable person

8

would be expected to realize that rain falling on grass would cause the grass to be wet and that a slope covered by wet grass would naturally be slippery. Boston Financial provided the appellant with an alternative route that was safe and, in its standard lease, it even told tenants to stay off the grass and shrubbery; it owed no further duty to Ms. Shelton.

*Id.* In *White*, the plaintiff was injured "just inside the door" as she entered the Wal-Mart store while she was "wearing 'flip-flops' or rubber-soled 'shower shoes'" on the evening of a rainy day. 476 So. 2d at 615. At trial, a Wal-Mart employee testified that he had mopped up water from the area five or six times. An expert testified that the failure to properly place floor mats inside the door, post an employee at the door or to put up a warning sign, all contributed to the plaintiff's fall. The defendant appealed the trial court's failure to direct a verdict in its favor. The court held that the facts were insufficient to sustain the negligence action as a matter of law because the plaintiff failed to show an "unusual accumulation of rainwater or 'other circumstances'" indicating negligence.

Under the facts of this case, the court cannot conclude that a reasonable person necessarily would recognize and appreciate that the deck board would naturally be slippery under the present facts. There is no testimony regarding the surface composition of the board or regarding the fact that the surface would have appeared wet to a reasonable person. The record does not establish as a matter of law that the plaintiff knew or should have known of the risks so as to warrant the granting of summary judgment for the defendant.[4] *Bogue* is distinguishable in that the opposition to the summary judgment was supported by the affidavit of an expert. *Shelton* is factually distinguishable in a number of ways, but particularly because common sense tells one that a grassy slope on a rainy day will be slippery. The open and obvious nature of the

---

[4] In reaching this decision, the court notes that the open and obvious nature of the defect is the only matter before the court in the present motion. Issues regarding contributory negligence and assumption of the risk are not now before the court and will remain for consideration by the jury.

danger is not as evident in the present case. *White* is also factually distinguishable. Equally important, it is legally distinguishable because whether the condition was open and obvious was not squarely presented by the parties on the appeal as it is in the present action.

## IV. CONCLUSION

Premised on the reasons stated above, the defendant's motion for summary judgment (doc. 7) is due to be denied. An appropriate order will be entered.

**DONE**, this the ___ day of March, 2001.

                                           **JOHN E. OTT**
                                           United States Magistrate Judge